UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TERRANCE JON IRBY,<br><br>      Plaintiff,<br><br> v.<br><br>CLIFFORD JOHNSON, *et al*.,<br><br>      Defendants. | CASE NO. C21-5605-BJR-MLP<br><br>REPORT AND RECOMMENDATION |

### I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Terrance Jon Irby is a state prisoner who is currently confined at the Washington Corrections Center ("WCC") in Shelton, Washington. He has submitted to this Court for filing a civil rights complaint under 42 U.S.C. § 1983 and an application to proceed with this action *in forma pauperis*. (Dkt. ## 5, 5-1.) Plaintiff has also submitted a number of exhibits and a declaration in support of his complaint (dkt. ## 5-2, 5-3, 5-4), and a motion for preliminary injunctive relief (dkt. # 5-9). The Court has screened Plaintiff's complaint and accompanying materials as required by 28 U.S.C. § 1915A(a) and concludes, based upon that review, that Plaintiff's complaint and this action should be dismissed pursuant to 28 U.S.C §1915A(b)(1),

and that Plaintiff's application to proceed *in forma pauperis* and his motion for preliminary injunctive relief should be denied as moot.

## II.   DISCUSSION

### A.   Adequacy of Pleading

Plaintiff's pleading is not a model of clarity, but the gravamen of his complaint appears to be that Defendants violated his rights under the Eighth and Fourteenth Amendments when they deprived him of adequate medical and mental health care. (*See* dkt. # 5-1 at 5-15.) Plaintiff names the following Defendants in his complaint: (1) Clifford Johnson, a medical doctor at the Clallam Bay Corrections Center ("CBCC"); (2) Stephen Sinclair, former Secretary of the Washington Department of Corrections ("DOC"); (3) Cheryl Strange, current Secretary of the DOC; (4) Amy Mok, an ARNP at the WCC; and (5) provider Moore. (*Id*. at 3-4.) Plaintiff seeks injunctive relief and damages. (*Id*. at 16.)

Plaintiff sets forth three claims for relief in his complaint. It appears that Plaintiff's first two claims pertain to the alleged failure of DOC medical providers to screen for and/or diagnose his prostate cancer. Plaintiff identifies Defendants Sinclair, Strange, and Johnson as the individuals responsible for these alleged deprivations, and he specifically asserts that the deprivations alleged in his first two claims occurred during the 2014-2016 timeframe. (Dkt. # 5-1 at 5-8.)

In a statement of additional facts incorporated into his complaint, Plaintiff asserts that while confined at the CBCC, Stafford Creek Corrections Center, and WCC in 2014, 2016, and 2017, no blood work was done to test for prostate cancer despite the fact that he was in his 40s and had a known family history of such cancer. (Dkt. # 5-1 at 9.) According to another

REPORT AND RECOMMENDATION
PAGE - 2

submission of Plaintiff's, he was diagnosed with prostate cancer in July 2020 while he was confined at the Skagit County Community Justice Center ("SCCJC") awaiting retrial on murder and burglary charges (dkt. # 6 at 2), and he apparently received treatment for the disease while in Skagit County custody (dkt. # 5-1 at 6). Plaintiff speculates that the cancer would have been detected sooner if appropriate screening had been conducted by DOC providers. (*Id*. at 6-9.)

Plaintiff also asserts in his statement of additional facts that on July 22, 2021, shortly after he was returned to WCC from the SCCJC, he requested a PSA blood draw for his cancer and, though results were returned by August 2, 2021, he did not hear from the urologist as to whether hormone therapy might be needed right away to prevent the spread of cancer. (Dkt. # 5-1 at 12.) In yet another submission, Plaintiff indicates that on September 1, 2021, he was taken to see a urologist who administered a hormone therapy injection that will last for six months. (Dkt. # 5-4.)

Plaintiff's third claim for relief pertains to the alleged denial of mental health medications upon his return to DOC custody from the SCCJC in July 2021. (Dkt. # 5-1 at 8.) Plaintiff identifies Defendants Mok, Strange, and Moore as the individuals responsible for this alleged deprivation. (*Id*.) Plaintiff's claim regarding the denial of his mental health medications, as asserted in his complaint, is not particularly clear. However, exhibits submitted by Plaintiff in support of his complaint add some context. Plaintiff's exhibits appear to show that while he was at the SCCJC, he had been prescribed venlafaxine and bupropion to address his mental health issues. (*See* dkt. # 5-2 at 4; Dkt. # 5-3 at 1.) When Plaintiff returned to WCC in July 2021, he initially refused to meet with the mental health staff or the psychiatric prescriber, and he advised a mental health associate that he didn't want or need mental health or psychiatry. (*See id*.)

REPORT AND RECOMMENDATION
PAGE - 3

Plaintiff was advised that one of his medications, the bupropion, was restricted at DOC, and the purpose of meeting with psychiatry was to initiate a taper of that medication and discuss alternatives. (*See id.*)

Because of Plaintiff's unwillingness to engage with mental health and psychiatry, Defendant Mok, apparently the psychiatric prescriber, advised Plaintiff that she would be tapering and discontinuing his psychotropic medications and that he would not be scheduled with psychiatry again until he had completed a mental health assessment or update, and was referred back to psychiatry. (*See* dkt. # 5-2 at 4.) Plaintiff was also advised, in response to a grievance he filed regarding his medications, that DOC prescribers could not continue him on medication they did not prescribe without establishing a provider/patient relationship with him, to include discussing with him the medication he had been taking at SCCJC and possible alternatives. (Dkt. # 5-3 at 1.) Plaintiff subsequently agreed to meet with psychiatry and his venlafaxine medication was increased again. (*See* dkt. # 5-4 at 2.) Plaintiff asserts, however, that he has received no substitute for the bupropion which, in his opinion, means he continues to be under-medicated. (*Id.*)

Rule 8(a) of the Federal Rules of Civil Procedure provides that in order for a pleading to state a claim for relief it must contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought. The statement of the claim must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The factual allegations of a complaint must be "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

REPORT AND RECOMMENDATION
PAGE - 4

555 (2007). In addition, a complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show: (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under 42 U.S.C. § 1983. *Lemire v. California Dep't of Corrs. & Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013). A supervisor may, however, be held liable under § 1983 "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

Plaintiff's pleading is generally deficient because it does not comply with the requirements of Rule 8(a). Though it is clear from Plaintiff's complaint that he believes he was not properly screened for prostate cancer while in DOC custody from 2014 to 2016, and that he

has been under-medicated for his mental health issues since his return to DOC custody in July 2021, the complaint is otherwise confusing and devoid of the facts necessary to state any viable claims for relief against the named Defendants. While Plaintiff alleges violations of both his Eighth and Fourteenth Amendment rights, so far as this Court can discern, Plaintiff's claims implicate only Eighth Amendment concerns.

In order to establish an Eighth Amendment violation for inadequate medical care, a plaintiff must demonstrate that he had a "serious medical need," and that defendants' response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). A prison official is deliberately indifferent to a serious medical need if he "knows of and disregards an excessive risk to inmate health." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To be found liable under the Eighth Amendment, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). An inadvertent or negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *see also Farmer*, 511 U.S. at 835 (finding "ordinary lack of due care" is insufficient to establish an Eighth Amendment claim). Moreover, mere differences of opinion

REPORT AND RECOMMENDATION
PAGE - 6

between a prisoner and prison medical staff or between medical professionals regarding the proper course of treatment does not give rise to a § 1983 claim. *Toguchi*, 391 F.3d at 1058. "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Id*. (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Plaintiff's first two claims for relief, in which he alleges that he was not properly screened for prostate cancer while in DOC custody, are defective. Two of the three Defendants implicated in these claims, Defendants Sinclair and Strange, are supervisory officials and it appears from the manner in which Plaintiff sets forth his claims that he is seeking to have these individuals held liable in this action based solely on their supervisory responsibilities or position, which is impermissible under § 1983. Indeed, Plaintiff alleges no facts demonstrating that Defendants Sinclair or Strange had any direct involvement in decisions regarding Plaintiff's medical care or are otherwise liable for any conduct rising to the level of a constitutional violation.

As to Dr. Johnson, Plaintiff faults the doctor for not undertaking appropriate prostate cancer screening in 2014, but he alleges insufficient facts to demonstrate that Dr. Johnson was deliberately indifferent to a serious medical need in 2014 when Plaintiff was purportedly under his care. Moreover, even assuming Plaintiff had alleged sufficient facts to implicate Dr. Johnson in conduct rising to the level of a constitutional violation, any claim relating to treatment or lack thereof in 2014 would be barred by the statute of limitations applicable to civil rights actions. For claims brought under 42 U.S.C. § 1983, federal courts apply the forum state's statute of

limitations governing personal injury actions. *See Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985). The applicable limitations period for Plaintiff's claims is therefore three years. RCW 4.16.080(2). Plaintiff signed his complaint on August 15, 2021, and thus, any claims that arose prior to August 15, 2018 are untimely.

With respect to Plaintiff's third claim for relief, in which he alleges that he has been under-medicated since his return to DOC custody, Plaintiff appears to have identified nothing more than a difference of opinion regarding the proper course of treatment for his mental health issues which does not rise to the level of an Eighth Amendment violation. Moreover, Plaintiff's claim of deliberate indifference is undermined by his own lack of cooperation with the mental health providers at WCC. As a prisoner in the care of the WCC providers, Plaintiff bears a responsibility to participate in the process in a meaningful way to allow the providers to properly assess his needs and provide necessary and appropriate care. In sum, Plaintiff has not adequately stated any claim for relief relating to the alleged denial of medications necessary to address his mental health issues.

**B.**     **28 U.S.C. § 1915(g)**

In addition to the fact that Plaintiff's complaint is deficient for the reasons set forth above, there are filing fee issues which preclude this case from proceeding at the present time. Plaintiff seeks leave to proceed with this action *in forma pauperis*, *i.e.*, without prepayment of the filing fee. Pursuant to 28 U.S.C. § 1915(g), a prisoner may not proceed *in forma pauperis* in a civil action if he or she has, on three or more prior occasions, brought civil actions or appeals that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim

upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

A review of Plaintiff's litigation activities in the United States District Courts for both the Eastern and Western Districts of Washington reveals that Plaintiff has accumulated at least three "strikes" under § 1915(g). *See Irby v. Munden, et al.*, Case No. 2:08-cv-05078-EFS (E.D. Wash.) (case dismissed March 25, 2009 for failure to state a claim upon which relief may be granted); *Irby v. Sinclair, et al.*, Case No. 2:10-cv-05053-LRS (E.D. Wash.) (case dismissed September 29, 2010 for failure to state a claim upon which relief may be granted); *Irby v. O'Neill*, Case No. 2:13-cv-00197-JLR (W.D. Wash.) (case dismissed March 11, 2013 for failure to state a claim upon which relief may be granted); *see also Irby v. O'Neill*, Case. No. 13-35258 (9th Cir.) (motion to proceed IFP on appeal denied on July 10, 2013 on grounds that appeal was frivolous).

Because Plaintiff has accumulated three strikes, he may not bring any civil action or appeal without prepayment of the full filing fee unless he shows that he was "under imminent danger of serious physical injury" at the time he signed his pleading. 28 U.S.C. § 1915(g); *Andrews v. Cervantes*, 493 F.3d 1047, 1053 (9th Cir. 2007) ("[I]t is the circumstances at the time of the filing of the complaint that matters for purposes of the 'imminent danger' exception to § 1915(g)."). The imminent danger exception requires a prisoner allege a danger which is "ready to take place or "hanging threateningly over one's head." *Id*. at 1056 (internal citations omitted).

While Plaintiff makes claims of imminent danger throughout his submissions, those claims are not credible. To the extent Plaintiff claims he is in imminent danger because he "has a life threatening disease hanging over his head," *i.e.*, prostate cancer (*see* dkt. # 5-1 at 7), the record makes clear that Plaintiff recently received treatment for the disease (dkt. # 5-4) and

REPORT AND RECOMMENDATION
PAGE - 9

nothing in the record suggests that he was, in fact, under imminent danger of serious physical injury at the time he filed his complaint relating to his cancer. Plaintiff's claims of suicidal ideation related to the tapering of his medications are more concerning. However, at the time Plaintiff signed his complaint, the tapering of his medication was, it appears, solely attributable to Plaintiff's refusal to engage with the mental health providers. In fact, in one of his submissions, Plaintiff readily acknowledges that he has refused to speak with DOC mental health providers "[f]or some 17 years." (*See* dkt. # 5-4 at 3.) Plaintiff cannot create the alleged danger by obstructing Defendants' ability to provide appropriate care and then use that as a mechanism to circumvent the § 1915(g) bar with which he is obviously familiar. In sum, Plaintiff has not made a credible showing that he satisfies the imminent danger exception to the § 1915(g) bar. Thus, if Plaintiff believes he can correct the deficiencies in his complaint identified above, he should be permitted to proceed with this action only upon payment of the full $402 filing fee.

### III.     CONCLUSION

Based on the foregoing, this Court recommends that Plaintiff's complaint and this action be dismissed without prejudice, under 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted. This Court further recommends that Plaintiff's application to proceed *in forma pauperis* and his motion for preliminary injunctive relief be denied as moot. A proposed order accompanies this Report and Recommendation.

### IV.     OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect

your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 5, 2021**.

DATED this 13th day of October, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 11